IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RACHEL SKEANS, ) | Case No. 1:20-cv-884 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | THOMAS M. PARKER |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

Plaintiff, Rachel Skeans, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 15. Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Skeans's applications for DIB and SSI must be affirmed.

**I.  Procedural History**

On May 9, 2016, Skeans applied for DIB. (Tr. 155-56).[1] Skeans alleged that she became disabled on January 1, 2015, due to "1. lupus; 2. fibromyalgia; 3. depression; 4. [hypertension];

---

[1] The administrative transcript appears in ECF Doc. 13.

5. asthma; 6. post stress tra[umat]ic disorder; [and] 7. anxiety." (Tr. 155, 225, 229).² The Social Security Administration denied the claim initially and upon reconsideration. (Tr. 64-77, 79-92). Skeans requested an administrative hearing. (Tr. 111-12). ALJ Joseph A. Rose held a hearing on Skeans's claim on January 17, 2018. (Tr. 39-63). The ALJ denied Skeans's claim in a June 18, 2018 decision. (Tr. 9-33). On August 8, 2018, the Appeals Council denied further review. (Tr. 1-3). On April 26, 2019, pursuant to a joint stipulation of the parties, this court remanded Skeans's case to the Commissioner for further proceedings. CM/ECF for N.D. Ohio Case No. 1:18-cv-2288, Doc. 16; (Tr. 1022).

Meanwhile, on September 24, 2018, Skeans filed a claim for SSI, alleging disability on account of: "1. Bipolar2; 2. Lupus; 3. Depression; 4. High Anxiety; 5. Tachycardia; 6. Fibromyalgia; 7. Asthma; 8. Insomnia; 9. Ulcer colitis; [and] 10. Spondylitis." (Tr. 893, 989, 1188). The Social Security Administration denied Skeans's SSI claim initially and upon reconsideration. (Tr. 996-1019, 1023-62).

On June 19, 2019, the Appeals Council vacated the ALJ's 2018 decision denying Skeans's DIB claim, remanded the case to the ALJ for further consideration, and consolidated Skeans's DIB and SSI proceedings. (Tr. 988-89). On June 25, 2019, Skeans requested a hearing. (Tr. 1114-15). The ALJ held a hearing on November 1, 2019. (Tr. 902-36). After the hearing, Skeans filed a motion pursuant to 5 U.S.C. § 556(d), requesting a supplemental hearing and interrogatories from the vocational expert ("VE"). (Tr. 1229-31). The ALJ issued a decision

---

² Skeans's disability application indicated that her alleged onset date was "June 1, 2001." (Tr. 155). However, the onset date was repeatedly referred to in the record as "January 1, 2015," which is the date Skeans refers to in her merits brief. ECF Doc. 16 at 1; *see* (Tr. 12, 65, 80, 225, 247). Because the disparity appears to have been a clerical error and the onset date is not in dispute, this order accepts that January 1, 2015 is the correct alleged onset date.

2

on January 8, 2020, denying Skeans's requests and finding that she was not disabled. (Tr. 858-93). On April 23, 2020, Skeans filed a complaint to obtain judicial review. ECF Doc. 1.[3]

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Skeans was born on December 9, 1973, and she was 41 years old on the alleged onset date. (Tr. 155). Her date last insured was March 31, 2023, at which time she would be 49 years old. (Tr. 155, 859). Skeans obtained her GED in 2001, and she had vocational training in "[m]edical assisting." (Tr. 230, 1189). Skeans had past work as a medical assistant, but the ALJ determined that she could not perform her past relevant work. (Tr. 230, 889, 1189).

### B. Relevant Medical Evidence

The ALJ's written decision summarized the relevant medical evidence. (*See* Tr. 855-93). Skeans does not challenge the ALJ's summary of the medical evidence or submit new evidence. And an independent review does not reveal any material inconsistencies between the ALJ's summary of the facts and the record before this Court. *Compare* (Tr. 855-93), *with* (Tr. 593-854, 1232-1541). Thus, the court adopts and incorporates by reference the ALJ's summary of the medical evidence.[4]

---

[3] A review of the administrative record revealed no appeal of the ALJ's January 8, 2020 decision to the Appeals Council. Skeans's failure to appeal to the Appeals Council constitutes a failure to exhaust administrative remedies. 42 U.S.C. § 405(g) (authorizing federal judicial review of "any final decision" of the Commissioner); *Willis v. Sullivan*, 931 F.2d 390, 397 (6th Cir. 1991) (explaining that a decision becomes "final" only "after the Appeals Council renders its decision"). However, the Commissioner waived the issue of exhaustion by admitting in his answer to Skeans's allegation in her complaint that she had exhausted all of her administrative remedies. *Ahghazali v. Sec'y of Health and Human Servs.*, 867 F.2d 921, 927 (6th Cir. 1989) (holding that the Secretary's admission that a "final decision" had been rendered waived § 405(g)'s exhaustion requirement); ECF Doc. 1 at 2; ECF Doc. 12 at 2.

[4] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D. Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 778 (6th Cir. 2017), *aff'd by* 139 S. Ct. 1148 (2019). *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009); *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

### C. VE Testimony

Skeans focuses her challenge to the ALJ's findings at Step Five of the sequential evaluation; thus, the court will summarize the pertinent portions of the record. On November 1, 2019, the ALJ held a hearing, at which David Salewsky, a VE, testified. (Tr. 925-35, 1225-26). The ALJ asked the VE whether an individual with Skeans's age, education, and work experience, could work if she were limited to light work except:

> No climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs. Frequent stooping, kneeling and crouching, only occasional crawling.
>
> Able to perform simple tasks and follow simple instructions with few if any workplace changes. No exposure to unprotected heights, commercial driving. Only occasional interaction with supervisors, the general public, as well as coworkers.

(Tr. 925-26). The VE responded that such an individual could work as a: (1) laundry worker; (2) price marker; and (3) mail clerk. (Tr. 926).

During cross-examination, the VE confirmed that in answering the ALJ, he used the DICTIONARY OF OCCUPATIONAL TITLES' ("DOT") definition of "occasional." (Tr. 928). The VE testified that most jobs involved a "probationary period" during which employees were expected to learn their job duties so the employee could work without routine supervision or ongoing guidance. (Tr. 927-28). The VE stated that if the employee continued to need supervision and guidance past the probation period, the employee likely would not remain competitive. (Tr. 928). Skeans then asked the VE whether an individual could perform the jobs the VE identified if the individual could not tolerate "more than occasional contact with supervisors and coworkers in the first 30 days of employment," *i.e.*, the probationary period. (Tr. 928-29). The VE responded, "[T]ypically these jobs are obviously learned quickly after a short demonstration," and said that such an individual could not perform the jobs he identified. (Tr. 929). He further

4

testified that a limitation to "simple tasks, simple instructions" would preclude an individual from carrying out detailed written and oral instructions. (Tr. 930).

The ALJ then questioned the VE on his credentials and work experience. (Tr. 931-32). The VE testified that he had "experience performing vocational expert vocational evaluations" and job placement. (Tr. 931). He also confirmed that, in the past 11 years, he had observed the jobs being performed at the job-placement sites. (Tr. 931). The following, paraphrased, exchange ensued:

> **Q:** Have you ever had to place people in an unskilled occupation, special vocational preparation ("SVP") 2 or less, where they had to learn the job in 30 days? (Tr. 931-32).
>
> **A:** "I have observed individuals working in both -- as a Price Maker, for instance, and the person learned very quickly. The person really didn't interact with, in this specific instance, didn't really interact with the manager more than [on] an occasional basis. It's learned very quickly and the person is able to begin doing the job on their own in a short amount of time." (Tr. 932).
>
> **Q:** How much is a short amount of time? (Tr. 932).
>
> **A:** One week. (Tr. 932).
>
> **Q:** Based on your observations, how long is the supervisor expected to oversee and interact the employee during that week for the employee to be proficient, following your example, as a price tagger? (Tr. 932).
>
> **A:** "Based on my observation, it would be a very short demonstration." The supervisor would conduct a short demonstration, tell the employee that she was now able to do the job, and then check the completed work for errors and mistakes. (Tr. 933).
>
> **Q:** That is different from your earlier testimony, which "seem[s] to contradict what you're saying now." Are your personal observations and experience different from what the DOT says regarding training and operations of employees within 30 days of employment? (Tr. 933).
>
> **A:** "Yes. In my experience, most jobs are done . . . with less supervision and oversight [than] what actually the DOT would say." (Tr. 933).

5

> **Q:** For clarification, "this person who starts a new job as an SVP, a price tagger [or] laundry . . . worker . . . they're not going to need more than 33% of instruction within the first 30 days of work. Is that correct? (Tr. 933).
>
> **A:** Yes. (Tr. 933).

The ALJ allowed Skeans to ask follow-up questions. (Tr. 933-35). Skeans did not ask any further questions related to ALJ's inconsistent testimony or concerning the VE's attempt to clarify. (*See* Tr. 933-35). Skeans's counsel instead elicited VE testimony that his training, education, and work experienced consisted of identifying the strengths and interests of individuals and helping them find work that they were capable of sustaining. (Tr. 933-34). He testified that, as a vocational rehabilitation counselor, he had "an understanding of the current world of work, and more importantly the types of jobs that exist in the community where [he] practice[s]." (Tr. 934).

### D. Objections to VE Testimony and Request for Interrogatories

Also on November 1, 2019, after the hearing, Skeans filed a motion under 5 U.S.C. § 556(d), objecting to the VE's inconsistent testimony as unreliable. (Tr. 1229-31). Because the VE contradicted himself, did not explain why he contradicted himself, and relied on his personal observations, Skeans requested that the ALJ issue interrogatories to the VE regarding the three occupations to which the VE testified. (Tr. 1230). Specifically, Skeans requested the name, address, and phone number of the employer of the job to which the VE testified regarding his personal observations and the date of last observation. (Tr. 1230).

Skeans further objected that the VE testified inconsistently regarding the jobs that she could perform because he testified that a person limited to "simple tasks" and "simple instructions" could not perform the duties of DOT Reasoning Level 3, which was the reasoning level of Mail Clerk. (Tr. 1230-31). Skeans noted that the VE had not issued a report before the

6

hearing, so she could not reasonably have prepared for or responded to the VE's testimony at the hearing. (Tr. 1229). She contended that a supplemental hearing was necessary if the ALJ was unable to render a favorable decision after reviewing the motion. (Tr. 1229).

### III. The ALJ's Decision

On January 8, 2020, the ALJ issued a written decision denying Skeans's claims. (Tr. 855-93). The ALJ made the following paraphrased findings relevant to Skeans's arguments in this case:

> 5. Skeans had the residual functional capacity ("RFC") to perform light work "except with no climbing of ladders, ramps or scaffolds; occasional climbing of ramps or stairs; frequent stooping, kneeling, and crouching; occasional crawling; able to perform simple tasks and follow simple instructions, with few if any workplace changes; no exposure to unprotected heights and commercial driving; and only occasional interaction with supervisors, the general public, and coworkers." (Tr. 871-72); *see also* (Tr. 871-89).
>
> 6. Skeans was unable to perform any past relevant work. (Tr. 889-90).
>
> 7. Skeans was a "younger individual" (18 to 49) on January 1, 2015. She later changed to an individual "approaching advanced age." (Tr. 890).
>
> 8. Skeans had a high school education and was able to communicate in English. (Tr. 890).
>
> 10. Considering Skeans's age, education, work experience, and RFC, there were jobs that exited in significant numbers in the national economy that she could perform. (Tr. 890).
>
> If Skeans had the RFC to perform the full range of light work, a finding of "not disabled" would have been required. However, her ability to perform all or substantially all of the requirements of light work were impeded by additional limitations. "To determine the extent to which these limitations erode the unskilled light occupational base, I asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." The VE testified that given all of those factors, the individual would be able to perform the requirements of occupations with a light exertional level and an SVP of 2, such as: (1) laundry worker (281,000 positions nationally); (2) price marker (160,000 positions nationally); and (3) mail clerk (50,000 positions nationally). (Tr. 891).

7

The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), "as supplemented by his education, training, and experience in vocational rehabilitation and job placement." (Tr. 891).

Skeans submitted a post-hearing brief with objections and requesting a supplemental hearing on the basis that: she could not have known the ALJ's hypothetical questions; the lack of a pre-hearing report; and the need for the VE to explain his inconsistent answers at the hearing. (Tr. 891).

"I deny this request for a supplemental hearing because the [VE] explained his statements and the apparent inconsistency between the [DOT] and his testimony by noting that his testimony was based on training, education, and experience, related specifically to placing individuals in the jobs he identified. . . . Counsel asked the [VE] to answer whether, consistent with the DOT's definition of terms, an individual limited to no more than occasional interaction, could perform the jobs the VE cited. He answered no to this question. On redirect with me, the VE testified that his education, training, and experience placing individuals in such jobs supports that these jobs do not require more than occasional interaction. . . . Counsel had the opportunity at the hearing to ask further questions about this experience, but he chose not to pursue the issue." (Tr. 891).

"Similarly, with respect to the issue of skills required to perform the jobs cited by the VE, while counsel argued that there is an inconsistency between simple instructions and simple tasks and the reasoning level of 2 required for the jobs cited by the VE, the VE testified that such jobs can be performed with the limitations noted. . . . The VE testified that the job duties required in the cited jobs are learned 'very quickly and after short demonstration,' and such demands are not inconsistent with the [RFC] assessment. Counsel was given the full opportunity to examine the [VE]. The [VE] answered fully all questions asked during the hearing." (Tr. 892).

"The [VE] testified that his testimony is based on his experience with employment specialist, vocational expert, vocational evaluations, [and] job placement; he has observed the jobs he discuss[ed]; he has placed individuals in introductory settings, involving jobs in SVP 2 and less; in such settings the individuals placed did not interact more than occasionally because the jobs were learned very quickly with short demonstration; the typical amount of time require[d] for such training would be completed within one week; within that one week period, the employee would interact with supervisors for only a short demonstration and then the supervisor would remain present for a short period to ensure the job task was being performed properly; he acknowledged that his personal experience differs from the DOT; his experience supports much less supervision and oversight from these jobs than is referenced in the DOT and its companion texts; the particular jobs cited above (Laundry Worker, Price Marker, and Mail Clerk), do not require more interaction than occasional even in the

8

> introductory period; during the first 30 days of work for the above-cited jobs, the individual would not interact with others more than occasionally; [and] his testimony is based on his education, training, and experience. . . . I find that the VE's explanation of the difference between his testimony and the information set forth in the DOT and its companion texts, is reasonable and consistent with his education, training and experience." (Tr. 892).

Based on these findings, the ALJ determined that Skeans was not disabled and denied her claims. (Tr. 892-93).

## IV. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case de novo." (quotation omitted)). This is so because the

9

Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals

any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

  **B.**  **Step Five Disability Determination: Substantial Evidence**

  Skeans argues that the ALJ could not rely on the VE's testimony because the ALJ failed to obtain a reasonable explanation from the VE on the VE's inconsistent testimony regarding the degree of supervision required during a training or probationary period. ECF Doc. 16 at 7-8. Skeans argues that the VE's explanation was not reasonable because his opinion was based on a single observation of one employee at a single employer performing one of the three jobs the ALJ relied on to deny benefits. ECF Doc. 16 at 7-8. She argues that the VE's testimony that the named jobs could be performed with a "very short demonstration" was unreasonable because it effectively reclassified the SVP 2 classification of the jobs under the DOT to SVP 1. ECF Doc. 16 at 8-9.

  The Commissioner responds that the ALJ could rely on the VE's testimony so long as it satisfied the substantial-evidence standard articulated in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). ECF Doc. 17 at 11. The Commissioner argues that the VE's testimony cleared the substantial-evidence bar because the VE drew upon his unchallenged professional experience and expressly testified that an individual could perform the three positions, despite being restricted to occasional social interaction. ECF Doc. 17 at 11-12, 14. The Commissioner

11

similarly argues that the substantial-evidence bar was cleared when the VE clarified that, based on his professional experience and understanding of the "current world of work," "most jobs" are performed with less supervision and oversight than the DOT would require. ECF Doc. 17 at 12-14. The Commissioner notes that the VE did not confine the foundation of his testimony to the one example of the price marker occupation, but expressly drew on his broader professional experience. ECF Doc. 17 at 13-14. The Commissioner argues that Skeans's lay assumption that the VE's testimony was unreliable was not a valid basis for reversal, and this court should defer to the ALJ's assessment of the VE's testimony. ECF Doc. 17 at 13-14.

Skeans replies that *Biestek* merely restated the existing substantial-evidence standard, and the case was inapposite because the VE evidence in *Biestek* was upheld solely because the claimant relied only on a procedural argument and had not otherwise challenged the VE evidence. ECF Doc. 18 at 2-3. Skeans's reply otherwise rests on her initial brief. ECF Doc. 18 at 4.

At the final step of the sequential analysis, the burden shifts to the Commissioner to produce evidence as to whether the claimant can perform a significant number of jobs in the national economy. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may determine that a claimant has the ability to adjust to other work in the national economy by relying on a vocational expert's testimony that the claimant has the ability to perform specific jobs. *Howard*, 276 F.3d at 238. A vocational expert's testimony in response to a hypothetical question is substantial evidence when the question accurately portrays the claimant's RFC and other vocational characteristics. *See id.* (stating that "substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question

12

accurately portrays [the claimant's] individual physical and mental impairments" (internal quotation marks omitted)); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (unpublished) (stating that the ALJ's hypothetical question must "accurately portray[] a claimant's vocational abilities and limitations").

However, an ALJ cannot rely on VE testimony that is "based on underlying assumptions or definitions that are inconsistent with . . . regulatory policies or definitions." SSR 00-4p, 2000 SSR LEXIS 8 at *4 (Dec. 4, 2000). If the VE's testimony appears to conflict with the DOT, the ALJ must: (1) "obtain a reasonable explanation for the conflict;" and, before relying on the VE's testimony, (2) resolve the conflict and explain in the decision how the conflict was resolved. *Id.*

The ALJ applied proper legal standards in determining that there were a significant number of jobs in the national economy that Skeans could perform. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241; *Howard*, 276 F.3d at 238; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ asked the VE whether the disparity between the VE's testimony concerning the degree of supervision required for the SVP 2 positions he identified a hypothetical individual could perform and the DOT was based on his personal observations and experience. (Tr. 933). The VE responded in the affirmative that, in his experience, "most jobs" are done with less supervision and oversight than what the DOT would require. (Tr. 933). That was sufficient for the ALJ to discharge his responsibility to obtain a reasonable explanation for the apparent conflict in the VE's testimony. *See* SSR 00-4p, 2000 SSR LEXIS 8 at *6 (stating that information obtained from a VE's experience in job placement or career counseling is an example of a reasonable explanation for an apparent conflict).

Although the VE only testified about a single experience concerning one of the three positions he identified, his testimony regarding the inconsistency was more broadly based on his

13

generalized experience. (Tr. 932-33). And as noted, the VE specifically testified that "*most jobs are done . . . with less supervision and oversight [than] what actually the DOT would say.*" (Tr. 933, emphasis added). Skeans has not challenged this statement. The fact that his testimony lowered the training requirements of the positions from SVP 2 (up to one month) to SVP 1 (a short demonstration) did not make his explanation any less reasonable. *See* SSR 00-4p, 2000 SSR LEXIS 8 at *7 ("The DOT lists *maximum* requirements for occupations as *generally* performed, not the range of requirements of a *particular job* as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." (emphasis added)); U.S. Dep't of Labor, DICTIONARY OF OCCUPATIONAL TITLES, Appendix C (4th ed., rev. 1991), *available at* https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM, (last visited Mar. 17, 2021).

      The ALJ also applied proper legal standards in how he explained the way he resolved the conflict between the VE's testimony and the DOT. SSR 00-4p, 2000 SSR LEXIS 8 at *4. The ALJ complied with the regulations when he expressly stated, "I find that the VE's explanation of the difference between his testimony and the information set forth in the DOT and its companion texts is reasonable and consistent with his education, training and experience." SSR 00-4p, 2000 SSR LEXIS 8 at *4; (Tr. 892). And the VE's testimony regarding his experience was substantial evidence supporting the ALJ's resolution of that conflict. (Tr. 892); *Biestek*, 139 S. Ct. at 1154. Further, because the ALJ resolved the conflict in favor of the VE's testimony and the ALJ's hypothetical accurately reflected his RFC finding,[5] the VE's testimony as a whole was substantial evidence supporting the ALJ's ultimate conclusion that Skeans could perform a significant number of jobs in the national economy. *Howard*, 276 F.3d at 238; *Lee*, 529 F. App'x at 715.

---

[5] Skeans has not challenged the ALJ's RFC finding.

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in his Step Five analysis, the ALJ's decision to find Skeans "not disabled" at Step Five fell within the Commissioner's "zone of choice" and cannot be second-guessed by this court. *Rogers*, 486 F.3d at 241; *Biestek*, 880 F.3d 783; *Mullen*, 800 F.2d at 545. Accordingly, the ALJ's finding that Skeans was not disabled must be AFFIRMED.

### C. Step Five Disability Determination: Denial of Request for Interrogatories

Skeans next argues that the ALJ was "unjustified" in denying her request for interrogatories. ECF Doc. 16 at 9. She argues that ALJ denied her request on the basis that she had waived the right to object to the VE's testimony by not raising the issue at the hearing. ECF Doc. 16 at 9. She argues that there is no rule requiring that claimants raise all issues concerning VE testimony during the hearing. ECF Doc. 16 at 9. She contends that such a rule would be contrary to the regulations, which instead provide her with a right to review and respond to VE evidence prior to the ALJ's decision. ECF Doc. 16 at 9-10 (citing SSR 96-9p, 1996 SSR LEXIS 6 (July 2, 1996)).

The Commissioner responds that Skeans's request was procedurally flawed because this court has held that claimants are barred from requesting post-hearing relief to pursue new objections. ECF Doc. 17 at 16-17. Because Skeans only superficially questioned the VE about his professional experiences and the observations underpinning his testimony, the Commissioner argues that she was precluded from belatedly challenging them after the hearing. ECF Doc. 17 at 17. The Commissioner argues that Skeans's motion was also substantively flawed because this court has held that an ALJ may – in his discretion – refuse a claim for a supplemental hearing when counsel affirmatively declares that he had no further questions at the conclusion of the hearing. ECF Doc. 17 at 17-18.

15

Skeans replies that she did question the VE on the topics that the Commissioner faults her for not raising. ECF Doc. 18 at 3. She argues that she has an "absolute right to test the reliability" of a VE's testimony. ECF Doc. 18 at 3-4. She also argues that the ALJ failed to carry out his duty to investigate facts and develop the parties' arguments for and against granting relief. ECF Doc. 18 at 4.

The Sixth Circuit has acknowledged that due process principles apply to social security proceedings. *Robinson v. Barnhart*, 124 F. App'x 405, 410 (6th Cir. 2005). Accordingly, a disability claimant is entitled to a "full and fair" social security hearing. *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996) (quotation marks omitted). This includes the right of the claimant to present all of her evidence and confront the evidence against her. *Id.* at 1306. Indeed, the Social Security regulations confer an individual right to "review and respond to the VE evidence prior to the issuance of a decision." SSR 96-9p, 1996 SSR LEXIS 6 at *27 n.8. A claimant's right to cross-examination, however, is not absolute; rather, it is limited to what is "reasonably necessary" to fairly and fully develop the record. *Flatford*, 93 F.3d at 1307. The need is more pressing when post-hearing evidence is gathered, because "a heightened danger exists that the claimant may not have the opportunity to cross-examine the [VE]." *Id.*

The ALJ applied proper legal standards in denying Skeans's request for interrogatories. Skeans has mischaracterized the ALJ's decision denying her request for interrogatories. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. To be sure, the ALJ noted counsel's failure to more fully question the VE on the inconsistent testimony. (Tr. 891). That was not, however, the sole basis for the ALJ's decision. Rather, the ALJ denied the request because the VE had adequately and reasonably explained the inconsistency. (Tr. 891-93). Put differently, the ALJ determined that interrogatories were unnecessary. As discussed above, the ALJ satisfied his burden to obtain

16

a reasonable explanation for the VE's inconsistent testimony. And there was no heightened danger that Skeans would be deprived of an opportunity to cross-examine the VE because no post-hearing evidence was gathered. *See Flatford*, 93 F.3d at 1307.

Moreover, this court has recognized that an "ALJ has no obligation to rule on objections made after the conclusion of the hearing." *Komorowski v. Comm'r*, No. 1:19-cv-1327, 2020 U.S. Dist. LEXIS 136340 at *4 (N.D. Ohio Jul. 31, 2020). And other courts have recognized that "ALJs have no duty to convene a second hearing to question a VE that the plaintiff could have raised initially." *E.g., Robberts v. Comm'r of Soc. Sec.*, No. 2:18-cv-00541, 2019 U.S. Dist. LEXIS 144724 at *24-25 (S.D. Ohio Aug. 26, 2019); *Keehl v. Comm'r of Soc. Sec.*, No. 1:18-cv-281, 2018 U.S. Dist. LEXIS 155010 at *9 (W.D. Mich. Sept. 12, 2018); *Kidd v. Berryhill*, 2018 U.S. Dist. LEXIS 101875 at *10 (E.D. Ky. June 29, 2018).

Finally, the court finds that Skeans did fully and fairly cross examine the VE concerning the difference between his original opinion and the requirements of the DOT. Skeans chose not to follow up after the ALJ conducted re-direct examination. The ALJ did not violate any Social Security regulations when he denied Skeans's motion seeking a further opportunity to inquire of the VE.

17

## V. Conclusion

Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Skeans's applications for DIB and SSI is affirmed.

**IT IS SO ORDERED.**

Dated: March 24, 2021

Thomas M. Parker
United States Magistrate Judge